IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| MARK ALLEN, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-10-176 |
| | § | |
| CITY OF TEXAS CITY, | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is the Defendant City of Texas City's

"[Amended] Partial Motion for Summary Judgment on Affirmative Defense of Unclean Hands,

Estoppel and Waiver, on Plaintiffs' Salaried Status Under The FLSA. and on Plaintiffs' State Law

Claims" (Docket Entry (Dkt.) No. 92),[1] to which Plaintiffs filed a response in opposition (Dkt.

No. 94) along with a Motion to Strike some of the summary judgment evidence that Defendant

offered in support of its Amended Motion. (Dkt. No. 95). Defendant filed both a reply (Dkt.

No.96), as well as a response to the Motion to Strike. (Dkt. No. 97). In addition, after Defendant

---

[1] Defendant previously filed a "Partial Motion for Summary Judgment on Affirmative Defenses of Unclean Hands and Estoppel, on Plaintiffs' Salaried Status Under the FLSA and on Plaintiffs' State Law Claims." (Dkt. No. 53). The Court ordered this Motion be abated until the parties' cross-motions were ruled upon. (Dkt. No. 68). After the parties' cross-motions were ruled upon, Defendant then filed the present Motion. (Dkt. No. 92).

filed its reply, it later filed additional evidence in support of its Amended Motion (Dkt. No. 100), which then prompted additional responses from the parties. (Dkt. Nos. 101, 104 & 108). After careful review of the submissions from the parties, the Court issues this Opinion and Order.

## I. BACKGROUND

The Plaintiffs in this action consist of numerous current or former firefighters employed by the City of Texas City, Texas (hereinafter, "the City" or "Defendant"). Plaintiffs filed suit against the City to recover unpaid overtime wages due under the Fair Labor Standards Act (hereinafter, "FLSA" or "the Act") and §142 of the Texas Local Government Code. (Dkt. No. 26). They seek declaratory and injunctive relief, request back pay for underpayment of wages, liquidated damages, and attorneys fees and costs.

A brief discussion of the ongoing relationship between the parties, as well as their collective bargaining agreements ("CBA"), appears to be warranted. Initially, and by way of history, the State of Texas prohibited collective bargaining for its public employees. In 1974, the Texas legislature carved out an exception for firefighters and police officers. Acting on this change in Texas law, the City of Texas City (hereinafter, "the City" or "Texas City") adopted collective bargaining for its firefighters.

In 1975, after working through the Firefighers' Association ("the Association") that represented the collective interests of the firefighters, the City reached its first CBA with the firefighters. The 1975 CBA contained a provision concerning overtime. The provision provided, in relevant part, that "[a]ll hours worked outside an employee's regular schedule, shall be paid at the rate of one and one-half times the basic rate of pay" and the "basic rate of pay shall be the annual salary divided by 2,912 hours." (Dkt. No. 53, Ex. A, Attachment No. 5). Despite the fact

2

that this agreement pre-dated the application of FLSA to state and local government employees, it contained a safeguard for the City by ensuring that it had the right to reopen negotiations concerning changes in the schedule in the event that laws or regulations required overtime.[2]

Despite an interim pay raise, the 1975 CBA remained in effect until 1983, when a new CBA was negotiated. The 1983 agreement, which was not signed into effect until February 2, 1984, provided that the firefighters would work a 56-hour week and be paid the "basic rate" for regularly scheduled hours. The "basic rate" was still defined as the annual salary divided by 2912 hours. There were no changes in overtime. If a firefighter worked outside of the regularly scheduled hours, then he would receive 1½ overtime his basic rate for regular hours. This agreement provided that it would automatically renew until it was replaced by a successor agreement.

On February 19, 1985, the Supreme Court issued its opinion in *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 555-56 (1985), which held the FLSA applied to state and local governments. Despite the effect of *Garcia* and the City's ability to re-open negotiations regarding overtime, there is no indication the City did so. Instead, approximately six months after the Court issued its opinion in *Garcia*, the parties signed the 1984 CBA on October 1, 1985,

---

[2] In 1974, Congress attempted to amend the FLSA to make it applicable to state and local government employees, however, the matter was quickly appealed and, in 1976, the Supreme Court determined that Congress impermissibly invaded State sovereignty and struck down the amendments. *See Nat'l League of Cities v. Usery*, 426 U.S. 823, 851-52 (1976). Thus, when the first agreement was reached, the Fair Labor Standards Act ("FLSA") did not apply to state and local governments. Instead, prior to the agreement, the only protection that existed for firefighters was state law, which prohibited cities with more than 10,000 inhabitants from requiring or permitting "any fire fighter to work more than seventy-two (72) hours during any one calendar week" and required overtime pay when firefighters worked more in an emergency. (Dkt. No. 56, TAB B (Deats Affidavit), Ex. 1, TEX.REV.CIV.STAT. art. 1269p, §6 (this article was later repealed and re-codified to TEX. LOC. GOV'T CODE §142.001, and then moved by amendment to §142.0015)).

3

which, while including an "Evergreen" clause, contained the same shift schedule and overtime provisions as before *Garcia*.

After the 1984 CBA expired in 1986, the parties were not able to reach a new agreement. Due to the "Evergreen" clause, the terms of the 1984 CBA remained in effect. Ultimately, the failure to reach an accord prompted the Association to file suit against the City. The Association alleged the City refused to bargain and negotiate in accordance with state law and the contract. The City responded by filing a counter-claim which alleged bad faith by the Association in refusing to negotiate to implement change in the shift to avoid overtime. In addition, the City argued that the 1984 CBA was void because the existence of the "Evergreen" clause effectively bound the City in perpetuity. It was at this point that the Plaintiffs' attorney emerged in the case. The court ruled in the City's favor with regard to the legality of the "Evergreen" clause, which then prompted the parties to resolve their difference and dismiss the action.

Subsequent to that litigation, the parties resumed their negotiations in 1989. The City proposed excluding sleep to avoid regularly scheduled overtime[3] and, while exempting matters of compliance from arbitration, the City also expressly agreed to assume the obligation to determine and pay any additional overtime compensation required by law such as FLSA and associated federal regulations. The Association, aided by the Plaintiffs' attorney,[4] ultimately accepted the City's proposal and the agreement, after being voted on by the Plaintiffs, was executed on June

---

[3] The City's proposal (*i.e.*, to exclude sleep from hours worked) was permitted under the FLSA as long as there was an express agreement to do so, however, it would not defeat the contractual right to overtime pay for hours worked outside the regular schedule.

[4] The Court pauses to note that after the 1989 Agreement was negotiated and ratified, there is no evidence that the Plaintiffs or the Firefighter's Association were assisted by counsel in any subsequent negotiation until 2010.

15, 1989. Notably, while the shift schedule remained the same, the workday increased from 24 hours to 24 hours and 5 minutes.[5]

The 1991 CBA, which contained no changes to the overtime provisions, was effective October 1991 through September 30, 1993.

The 1993 CBA resulted in the same shift schedule, but some significant changes to the overtime provisions which included: (1) eliminating the exclusion of sleep from the hours worked; (2) changing 24 hours and 5 minutes back to 24 hours; (3) altering the time shift from 5:25 p.m. to 7:00 a.m.; (4) changing the work cycle from 21 days to 28 days; and (5) providing a "P-day" each 28 days.[6] In addition, the hourly rate of pay was changed so that it was calculated on 2600 of work hours per calendar. One aspect of the agreement that did not change was the employer's obligation to determine and pay any additional overtime compensation required by law.

The 2002 CBA contained no changes in the overtime provisions; however, beginning in 2002, a management rights provision was added. This provision allowed the City/Fire Department to use "pre-employment qualifications" which could be amended or modified at any time prior to the completion of the first year probation status.

A new CBA was ratified in 2010, which brought additional changes to the overtime provisions for firefighters. First, this CBA eliminated the language concerning hourly rate and, for the first time, provided that firefighters "will be paid on a salary basis." Second, while the

---

[5] Plaintiffs contend that although an additional 5 minutes would have increased the total hours worked by 10 hours per year, there is no indication that firefighters were paid for the extra time.

[6] The new agreement provided unpaid time off to prevent FLSA overtime pay liability for regularly scheduled work.

5

agreement contained the same shift schedule (*i.e.*, 3 shifts ever 9 days) the work cycle was decreased from 28 to 27 days so that 9 shifts were worked each cycle and firefighters were expected to work 204 hours each work cycle. Third, "P days" were still provided, but they were decreased from 24 hours to 12 hours. Fourth, "basic salary" was now defined as the annual salary divided by 2,756 hours. Fifth, the 2010 CBA added a provision that firefighters would receive overtime on a half-time (½) basis for scheduled hours worked between 204 and 216 hours in a 27-day work period and that firefighters would only receive overtime paid at one-and-a-half (1 ½) times the "basic rate" for hours worked outside the regular schedule in excess of 216 hours in a 27-day work period. Finally, unchanged from past agreements, the City agreed to continue to assume the burden of promising to comply with the FLSA.

Faced with an ever-increasing amount of training that they were required to do on their own time, it appears that firefighters began to question whether they were entitled to compensation for their training time. They also began to believe that their concerns were validated when they watched David Zacherl, then Association President, file a lawsuit over the same issue in 2003, which resulted in him receiving a settlement from the City in 2004. Finally, their concerns prompted them to question whether they were receiving FLSA overtime at the FLSA "regular rate." Against this backdrop, Plaintiffs opted to commence this action against the City.

## II. DEFENDANT'S MOTION

In a prior Opinion and Order, this Court denied the parties' cross-motions for summary judgment with regard to the issue of whether the required training imposed by the City constituted "hours worked" under the Act. However, in the event that the required training, in whole or in part, is later found to constitute "hours worked," additional issues related to Plaintiffs' claims

6

become relevant (*i.e.*, what constitutes the Plaintiffs' "regular rate" for purposes of overtime pay due under the FLSA; what is the appropriate method for calculating overtime due and unpaid under the FLSA; and whether the City is entitled to offsets for amounts paid under the parties' collective bargaining agreements against any additional amounts under the Act). The existence of these additional issues prompted the City to file the instant motion for summary judgment which is ripe for adjudication.

## III. STANDARD OF REVIEW

The Court analyzes the motion under the well-established summary judgment standard. Fed.R.Civ.P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## IV. DISCUSSION

### A. The Equitable Defenses

In its Amended Motion for Summary Judgment ("Amended Motion"), the City's first three arguments relate to the issue of "regular rate" of pay. The City theorizes that the Firefighter's Association, assisted by Plaintiffs' attorney, negotiated language in the 1989 CBA by which they agreed that statutory overtime could be paid at the lower basic rate specified in the CBA rather than the regular rate specified by the FLSA. The City contends that the Plaintiffs, based on this conduct and their silence over the years, precludes them from claiming that the "regular rate" of pay for overtime is anything other than the "basic rate" specified in the collective bargaining agreements based on the equitable principles of wavier, estoppel and unclean hands. The City also

7

refers the Court to the Conditions of Employment Agreements that some of the Plaintiffs—those that were more newly hired—signed when obtaining employment with the City.[7] Plaintiffs responded to the City's arguments by insisting that these equitable arguments are not available to FLSA claims and, even if they were, the facts do not support the application of the equitable defenses. The Court will address the defenses in turn.

### 1. Waiver

As an initial matter, the City's ability to rely on waiver as an affirmative defense appears questionable. Based on the intent of the Act,[8] it has been a long-established rule that employees may not waive their FLSA rights. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994); *Tho Dihn Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, (2d Cir. 2002); *Reich v. Stewart*, 121 F.3d F.3d 400, 407 (8th Cir. 1997); *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1319-20 (S.D.Fla. 2005). There are, of course, exceptions to this rule, but none that apply in the present case. *See* 29 U.S.C. § 216(b) & (c); *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Nonetheless, even assuming the City could rely on waiver as a defense, summary judgment is not warranted. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually

---

[7] These agreements provided that training time did not constitute compensable hours of work.

[8] The FLSA was intended to grant "specific minimum protections to individual workers" and ensure those employees covered would receive a fair day's pay as well as be protected from overwork and underpayment. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 734 (1981); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). "The minimum protections the FLSA provides to individual workers, including 29 U.S.C. §207(a)(1), "take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine*, 450 U.S. at 740-41.

known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex.2008). A showing of wavier requires: "(1) an existing right, benefit, or advantage held by the party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 748 (Tex.App.–Austin 2010, pet. denied); *see also, Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) (explaining that "[w]aiver is largely a matter of intent; thus, for implied waiver to be found through the parties actions, intent must be clearly demonstrated by the surrounding facts and circumstances"). The party asserting waiver as an affirmative defense bears of proof. *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex.App.–El Paso 2005, no pet.).

The evidence in the present case, when viewed in the light most favorable to the Plaintiffs, does not establish that the Plaintiffs intentionally and knowingly waived the right to use the "regular rate" to calculate FLSA overtime pay. Instead, the evidence reflects that the City reached its first collective bargaining agreement (CBA) with the firefighters in 1975—a decade before the Supreme Court concluded that the FLSA applied to state and local governments.[9] In this initial contract, as well as the contracts that followed, the term "basic rate" was used and, contrary to the City's suggestion to the contrary, there is no evidence that the term was newly added in the 1989 contract or that the term obtained any special new meaning at all in the 1989 negotiations. In fact, apart from any speculation or conjecture, there is no indication that the negotiating parties even discussed and/or agreed that the contract term "basic rate" was synonymous with the

---

[9] *See Garcia v. San Antonio Metr. Transit Authority*, 469 U.S. 528, 555-56 (1985).

"regular rate" that is used for FLSA purposes. While it is true that many years have elapsed since the time this contract was negotiated, the Court is not willing to conclude that the mere passage of time alone triggered a waiver, particularly since the City in the 1989 agreement expressly agreed to assume the obligation and pay any additional overtime compensation required by laws such as FLSA and associated regulations. Nor is the Court willing at this point in time to conclude that the newly hired Plaintiffs knowingly and intentionally waived their rights under the FLSA by signing the Conditions of Employment Agreements.

Therefore, for all the reasons discussed, this Court concludes that the City's amended motion must be, and is, **DENIED** as to the affirmative defense of waiver.

### 2. Estoppel

Similar to waiver, reservations have been expressed as to the availability of estoppel as an affirmative defense to a claim under the FLSA. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959); *Burry v. Nat'l Trailer Convoy, Inc.*, 338 F.2d 422, 426-27 (6th Cir. 1964); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir. 1951); *see Tran v. Thai*, Civil Action No. H-08-3650, 2010 WL 5232944, at *7 (S.D.Tex. Dec.16, 2010). Unlike other Circuits, the Fifth Circuit has permitted an employer to rely on the defense of estoppel to an employees's FLSA claim, but it is equally important to point out that it decided the issue based on the vary "narrow facts" that existed in the case. *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (upholding the application of estoppel defense where an employee furnished, unbeknownst to the employer, false data by under-reporting hours worked). Absent the "narrow facts" that existed in *Brumbelow*, the availability of the defense of estoppel, like that of waiver, might be questionable. *See Caserta*, 273 F.2d at 946; *Burry*, 338 F.2d at 426-27; *Handler*, 191

10

F.2d at 123.

Even if the defense of estoppel were a valid defense to a FLSA claim, the Court concludes that the City has failed in its burden of establishing that Plaintiffs should be estopped from pursuing their statutory rights under the FLSA. *See Connally v. Home Ins. Co.*, 525 S.W.2d 252, 253 (Tex.Civ.App. 1975, writ ref'd n.r.e.) (the party asserting estoppel bears the burden of proving each and every element). Under Texas law, the defense of estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000); *see also, Lindley v. McKnight*, 349 S.W.3d 113, 131 (Tex.App.-Fort Worth 2011, no pet.) (explaining that the defense "forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects"). In order to establish equitable estoppel, the defendant must establish: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representation." *GE Capital Commercial, Inc. v. Worthington Nat. Bank*, Civil Action No. 3:09-CV-572-L, 2011 WL 5025153, at *9 (N.D.Tex. October 20, 2011) (quoting *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 515-16 (Tex. 1998). After viewing the evidence in ths case in a light most favorable to the Plaintiffs, the Court finds no evidence that establishes that the Plaintiffs knowingly made false representations or concealed material facts to the City. Also lacking is any evidence

11

that the City, which was represented by counsel during the 1989 negotiations and thereafter,[10]

lacked the knowledge or means of obtaining knowledge of the facts.

   The Court, therefore, concludes that the City's amended motion is **DENIED** as to estoppel.

### 3. Unclean Hands

   The City also asserts the affirmative defense of "unclean hands." The "unclean hands"

maxim is often stated in the following language: "[H]e who doeth fraud, may not borrow the

hands of the chancellor to draw equity from a source his own hands hath polluted." *Ellzey v.*

*James*, 970 So.2d 193, 195-96 (Miss.Ct.App.2007). In other words, "[t]he doctrine applies

against a litigant whose own conduct in connection with the same matter or transaction has been

unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and

righteous dealing." *GE Capital Commercial*, 2011 WL 5025153, at *4 (quoting *Flores v. Flores*,

116 S.W.3d 870, 876 (Tex.App.–Corpus Christi 2003, no pet.). The proponent of the doctrine,

in this case the City, bears the burden of proof. *See Adams v. First Nat'l Bank*, 154 S.W.3d 859,

876 (Tex.App.-Dallas 2005, no pet.); *see also Long Distance Int'l Inc. v. Telefonos de Mexico,*

*S.A. de C.V.*, 49 S.W.3d 347, 350-51 (Tex.2001) (applying general rule that party relying on

affirmative defense must conclusively establish defense in summary judgment context).

   The Court concludes that the City has failed in its burden of establishing this defense for

several reasons. Initially, to the extent that the City relies on actions allegedly taken by the

Association and/or the Plaintiffs' attorney—not that of the Plaintiffs themselves—the doctrine has

no application. *See In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex.App.–Houston [14th

---

[10] Unlike the City, the evidence only reflects that the firefighters had the benefit of counsel during the 1989 negotiations and then, not again, until 2010.

Dist.] 2006, no pet.) (determining that the doctrine of unclean hands will be applied only to "one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing."). Next, with regard to any actions the Plaintiffs' themselves may have taken, there is no evidence, merely speculation and/or conjecture, that Plaintiffs acted willfully. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 621 (5th Cir.), *cert. denied*, _U.S._, 134 S.Ct. 88, 187 L.Ed.2d 254 (2013) (recognizing that "mere awareness" is not enough to establish unclean hands, rather, the evidence must establish that the party knowingly and intentionally engaged in the conduct with the bad faith intent of benefitting from their actions). At best, the evidence might establish negligence, but this will not suffice. *See GE Capital Commercial*, 2011 WL 5025153, at *4 ("negligence by a plaintiff is likely insufficient to bar recovery under the unclean hands maxim"). Finally, it appears incongruous to permit the City to avail itself of the equitable doctrine of unclean hands to avoid paying Plaintiffs for training time compensable under the FLSA by claiming that they "voluntarily" signed agreements relinquishing their statutory rights. *Cf. Baker v. Barnard Constr. Co., Inc.*, 146 F.3d 1214, 1216-17 (10th Cir. 1998) (holding that employee/employer agreements did not waive the employee's statutory rights under the FLSA); *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 794-95 (10th Cir. 1976) (holding that a pre-hire agreement could not be used to circumvent FLSA's overtime pay requirements).

The Court, therefore, concludes that the City's Amended Motion is **DENIED** with regard the defense of unclean hands.

### B. Determination that Plaintiffs are Salaried Employees

In the event that it "is unsuccessful in its various defenses to Plaintiffs' claims," the City

asks the Court to make a determination that Plaintiffs are salaried employees under the FLSA because "the parties will have to determine the amount of backpay that may be due, if any." (Dkt. No. 92 at 53). A determination of this issue appears premature and/or unnecessary for several reasons. First, although one might assume, as did the Plaintiffs (Dkt. No. 94 at 45-55), that the City was seeking this determination for purposes of a "fluctuating workweek" argument, the City has since clarified that this is not its purpose. Beyond this clarification, the City fails to explain the basis of its request. Second, the Court observes that "Plaintiffs have already conceded that they became salaried employees in March 2010." (Dkt. No. 101). Finally, while not deciding the issue, the necessity of this determination would appear questionable *if* Plaintiffs' damages would be calculated in the same manner despite the classification. The Court declines to make this determination in a vacuum. Unless or until the City is willing to clarify the basis for its request, the Court declines to consider the request.

The Court concludes that the City's Amended Motion with respect to this issue is **DENIED without prejudice**.

### C. State Law Claims

The City moves for summary judgment on the Plaintiffs' state law claims on different grounds. First, the City insists that if the Court grants its Motion on all Plaintiffs' federal claims then it will lose subject matter jurisdiction over these claims. (Dkt. No. 92 at 61). Insofar as the Court has denied the City's amended motion, the City's argument is moot. However, even if it were not, it has no merit. *See* 28 U.S.C. §1367(c) (federal court has *discretion* to decline the exercise of supplemental jurisdiction).

Second, the Court declines to find that Plaintiffs' overtime claims under the state statute

14

are, as a matter of law, pre-empted by the FLSA. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 886 (N.D.Iowa 2008) (collecting cases); *see also Floridia v. DLT 3 Girls, Inc.*, No. 4:11-CV3624, 2013 WL 127448, at *5 (S.D.Tex. 2013) (declining to find FLSA pre-empted state law claim for "gap time"); *McCumber v. Eye Care Center of America, Inc.*, 2011 WL 1542671, at *14 (recognizing that if the plaintiff's "status under the FLSA [was] decided in favor of defendants," his claim under the state statute would remain cognizable). Nevertheless, this does not permit the Plaintiffs – a point which they concede – to recover overtime under both the FLSA and the Texas statute. *See McCumber*, 2011 WL 1542671, at *14 (concluding that plaintiff cannot recover overtime under both the federal and state statutes); *Floridia*, 2013 WL 127448, at * 5.

Next, the City argues that the Plaintiffs waived their state right to claim a higher "regular rate" than the contractual "basic rate" for overtime hours by virtue of the collective bargaining agreements. Section 146.006 of the Texas Local Government Code does allow the parties to a municipal collective bargaining agreement the ability to pre-empt any state law and, once waived in the collective bargaining agreement, they are estopped from seeking a remedy under the state laws. TEX.LOC.GOV'T CODE §174.006(a). However, in order to constitute an effective waiver of a civil service statute, the contract provision must "specifically provide otherwise" than does the statute.[11] *City of San Antonio v. Scott*, 16 S.W.3d 372, 376 (Tex.App.–San Antonio 1999, pet. denied). In the present case, the CBA demonstrates no clear waiver of the right.

Finally, the City argues how damages, if any, should be calculated and the extent of the

---

[11] Section 174.006(a) of the Texas Local Government Code provides "[a] state or local civil service provision prevails over a collective bargaining contract under this chapter unless the collective bargaining contract specifically provides otherwise."

offsets permitted if Plaintiffs are allowed to recover under both federal and state law. (Dkt. No. 92 at 62, 65). Insofar as liability has not been determined, the City's argument is denied as it is premature.

The Court, therefore, concludes that the City's Amended Motion with respect to this issue is **DENIED without prejudice**

### D. Request For Attorney Fees

The City requests an award of attorney fees because it claims that Plaintiffs and their attorney acted with a "bad faith, improper motive, [and] reckless disregard of the duty owed to the court." (Dkt. No. 96 at 36). Although the FLSA permits an award of attorney fees it is for the prevailing plaintiff. *See* 29 U.S.C. §216(b); *see also, Fassbender v. Treasure Chest Casino*, Civil Action No. 07-5265, 2008 WL 170071, at *8 (E.D.La. January 16, 2008) (recognizing that the FLSA "does not provide for an award of attorneys' fees to a defendant or to a 'prevailing party'"). Nevertheless, this does not preclude an award of attorney's fees for a defendant. *Flanagan v. Havertys Funiture Cos., Inc.*, 484 F.Supp.2d 580, 581 (W.D.Tex. 2006). When there is no express provision that governs, "the 'American Rule' applies and the defendant must show bad faith on the plaintiff's part in order for a district court to award attorney's fees to a prevailing defendant." *Id.*

Having reviewed the City's request, along with its supporting evidence, as well as the responses thereto, the Court concludes that attorney's fees for the City are not appropriate because the evidence to which the City refers, some of which it attributes to a non-party,[12] does not rise

---

[12] The City suggests that the Firefighters Association, which is not a party to the action, took inadequate steps to respond to the subpoena by not attempting to locate the filing cabinet. The City also

16

to the level of bad faith, improper motive, or reckless disregard of the duty owed to the court which would warrant attorney fees. *See generally*, *Edwards v. General Motors Corp.*, 153 F.3d 242, 246-47 (5th Cir. 1998); *Flanagan*, 484 F.Supp.2d at 581; *Herrera v. Utillimap Corp.*, Civil Action No. H-11-3851, 2012 WL 3527065 at *3 (S.D.Tex. Aug. 14, 2012). Accordingly, the City's request for attorney's fees is **DENIED**.

## CONCLUSIONS

Accordingly, for all the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED**:

1)   Defendant's Amended Motion for Summary Judgment (Dkt. No. 92)is **DENIED**;

2)   Defendant's request for attorneys fees, which is contained within its summary judgment motion, is **DENIED**; and

3)   Plaintiffs' Motion to Strike (Dkt. No. 95) Defendant's summary judgment evidence is **DENIED** as **MOOT**.

**DONE** at Galveston, Texas, this _____ *5th* _____ day of June, 2014.

_____
John R. Froeschner
United States Magistrate Judge

_____

suggests that the Firefighters Association destroyed documents.